```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

UNITED STATES,                              NOT FOR PUBLICATION

        v.
                                            MEMORANDUM & ORDER
JIANG YAN HUA and CHEN KUO,                 10-cr-671 (KAM)

        Defendants.

----------------------------------X
```

**MATSUMOTO**, United States District Judge:

## INTRODUCTION

Defendant Chen Kuo ("Kuo") and co-defendant Yan Hua Jiang[1] ("Jiang") are charged by a September 1, 2010 indictment with one count of conspiring to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, and one count of attempting to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in violation of 18 U.S.C. §§ 1951(a)[2] and 3551[3] et seq. (See ECF[4] No. 9, Indictment

---

[1] Defense counsel for Jiang clarified during a 11/10/10 status conference that Jiang, and not Hua, is the correct last name for the defendant. (See ECF Minute Entry dated 11/10/10.) The government and defendant Jiang should stipulate as to the accurate name for the defendant and the correction of all court documents, including the Indictment.

[2] 18 U.S.C. § 1951(a) provides, in part, that "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by . . . extortion or attempts or conspires so to do" shall be guilty of a crime. Subsection (b) defines "extortion" as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."

("Ind't").) Now before the court are Defendant Kuo's motion pursuant to Rule 14(a) of the Federal Rules of Criminal Procedure[5] to sever his trial from the trial of co-defendant Jiang and motion for disclosure of "other crimes, wrongs or acts" evidence pursuant to Rule 404(b) of the Federal Rules of Evidence. (ECF No. 22, Notice of Mot. ("Mot.").) For the reasons set forth below, defendant Kuo's severance motion is denied.[6] The court has scheduled submissions for the government's 404(b) disclosures by order dated November 10, 2010. (See ECF Minute Entry dated 11/10/10.)

## BACKGROUND

As set forth in the Complaints, the Indictment, and other government submissions, the alleged facts are as follows:

In approximately January or February 2010, Target Bus Company began competing with an existing bus company owned by

---

[3] 18 U.S.C. §§ 3551 et seq. generally provide penalties for offenses described in any federal statute.

[4] All citations are to docket 10-cr-671 unless otherwise noted.

[5] Rule 14(a) of the Federal Rules of Criminal Procedure provides that "[i]f the joinder of . . . defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may . . . sever the defendants' trials, or provide any other relief that justice requires."

[6] The court makes no determination at this time about the admissibility of any of the co-defendant statements as vicarious admissions of the defendant pursuant to Federal Rule of Evidence 801(d)(2)(e).

John Doe #1 ("Victim Bus Company"). (See ECF No. 1,[7] Sealed Complaint as to Jiang ("Jiang Compl.") ¶¶ 2-3; ECF No. 1,[8] Sealed Complaint as to Kuo ("Kuo Compl.") ¶¶ 2-3.) Both companies provide transportation services for restaurant workers from New York City to Poughkeepsie, New York. (Id.) Restaurant owners and workers in Poughkeepsie, New York received business cards from Target Bus Company that looked almost identical to the business cards from Victim Bus Company. (Jiang Compl. ¶3; Kuo Compl. ¶ 3.) The Target Bus Company cards contained two telephone numbers, one of which allegedly belongs to defendant Kuo. (Kuo Compl. ¶ 3.)

Between February 2010 and August 2010, employees from Target Bus Company allegedly attempted to force Victim Bus Company customers to switch companies by taking their cell phones and telling customers that the phones would be returned only if they began to use the services provided by Target Bus Company. (Jiang Compl. ¶ 4; Kuo Compl. ¶ 4.) Further, on several occasions, Target Bus Company vehicles allegedly parked against Victim Bus Company's vehicles in order to prevent them from loading passengers. (Jiang Compl. ¶ 5; Kuo Compl. ¶ 5.)

---

[7] This citation is to docket 10-mj-842. The complaint was unsealed by order dated August 12, 2010. (See ECF No. 3, Order to Unseal Case.)

[8] This citation is to docket 10-mj-931. The complaint was unsealed by order dated August 13, 2010. (See ECF No. 3, Order to Unseal Case.)

In February 2010, co-defendant Jiang allegedly drove up to a Victim Bus Company van and told John Doe #1 that if Jiang found John Doe #2, a Victim Bus Company driver, he would "break his legs." (Jiang Compl. ¶ 6; Kuo Compl. ¶ 6.) Around that same time period, Jiang also allegedly threatened John Doe #2 by approaching him at a gas station and asking "are you afraid of dying[?]" (Jiang Compl. ¶ 8; Kuo Compl. ¶ 8.) In June 2010, John Doe #1 was attacked by three individuals with baseball bats and was severely injured. (Jiang Compl. ¶ 9; Kuo Compl. ¶ 9.) John Doe #1 identified defendant Kuo as one of his attackers and further identified Kuo as an individual who he had seen driving a Target Bus Company van belonging to Jiang. (Kuo Compl. ¶ 10.) The following month, on July 19, 2010, at approximately 1:00 a.m., John Doe #1 received a telephone call in which the caller threatened to kill John Doe #1's family. (Jiang Compl. ¶ 10; Kuo Compl. ¶ 11.)

The government claims that Jiang made several oral statements following his arrest. (See ECF No. 24, Gov't Resp. in Opp'n to Mot. to Sever ("Opp'n") at 1.)[9] Specifically, relevant to the instant motion, Jiang allegedly made the following statements: (1) In June 2010 he partnered with Kuo, whom he knew as "Stupid," to operate the bus company that

---

[9] As the opposition is not paginated, the court refers to the page numbers assigned by the Electronic Case Filing system ("ECF").

transported restaurant workers from New York City to Poughkeepsie, New York, competing with the Victim Bus Company, owned by John Doe #1; (2) Kuo complained that business was slow and suggested that they "beat up" John Doe #1, and Jiang advised against this suggestion; (3) Days later, Kuo met with a third business partner to discuss the beating of John Doe #1, and expressed concern that John Doe #1 would recognize them from the beating; and (4) The phone number (845) 775-0019, from which the threatening call to John Doe #1 on July 19, 2010 was made, belongs to Kuo, and Jiang made several calls before and after 1:00 a.m. on July 19, 2010 to that phone number. (Id. at 1-2.)

Defendant Kuo requests a separate trial from co-defendant Jiang, arguing that these statements made by Jiang "expressly implicate" Kuo in the alleged offenses and that the potential introduction of such "powerfully incriminating" statements of a non-testifying co-defendant at trial would prejudice Kuo and deprive him of his Sixth Amendment right of confrontation. (See ECF No. 22-1, Mem. of Law in Supp. of Def.'s Pre-Trial Mot. ("Mem. in Supp.") at 2-3.)[10] The government opposes the motion to sever trial, arguing that admission of the co-defendant statements with redactions would not violate Kuo's rights under the Sixth Amendment. (See Opp'n

---

[10] As the memorandum is not paginated, the court refers to the page numbers assigned by the Electronic Case Filing system ("ECF").

at 2-5.) Defendant Kuo did not file a reply in support of his motion for severance, despite the opportunity to do so, to address the issue of redaction. (See Ltr. dated 11/22/10 (stating that defendant Kuo declines to file any reply).)

For the reasons that follow, the court finds that redaction of identifying information as to Kuo from the co-defendant statements eliminates any Confrontation Clause concerns and severance is consequently not warranted. The court denies Kuo's motion under Rule 14(a) to server his trial.

**DISCUSSION**

**A.  Standard**

"There is a preference in the federal system for joint trials of defendants who are indicted together" because joint trials "promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." Zafiro v. United States, 506 U.S. 534, 537 (1993) (internal quotation marks and citation omitted); see also Richardson v. Marsh, 481 U.S. 200, 210 (1987) ("It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case

6

beforehand."). "This preference is particularly strong where, as here, the defendants are alleged to have participated in a common plan or scheme." United States v. Salameh, 152 F.3d 88, 115 (2d Cir. 1998) (per curiam).

Indeed, where joinder is proper,[11] a court "should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539. Thus, a defendant seeking severance "must show prejudice so severe as to amount to a denial of a constitutionally fair trial." United States v. Spinelli, 352 F.3d 48, 55 (2d Cir. 2003) (internal quotation marks and citation omitted). Yet, the possibility of prejudice alone does not necessarily mandate severance pursuant to Rule 14. See Zafiro, 506 U.S. at 538-39. Rather, Rule 14 "it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." Id.

Co-defendants Jiang and Kuo were indicted together, and thus there is a strong preference in the federal system for a joint trial in this case. See Zafiro, 506 U.S. at 537.

---

[11] Pursuant to Rule 8(b) of the Federal Rules of Criminal Procedure, joinder is appropriate where defendants "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."

7

However, defendant Kuo asserts that introduction of the non-testifying co-defendant statements will violate his specific trial rights under the Confrontation Clause of the Sixth Amendment. (See Mem. in Supp. at 2-3.) Therefore, Kuo argues, severance is warranted under Rule 14(a). (See id.)

**B. Confrontation Clause and Bruton Concerns**

*1. Applicable Law*

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The crux of this right is that the government cannot introduce at trial statements containing accusations against the defendant unless the accuser takes the stand against the defendant and is available for cross examination." Ryan v. Miller, 303 F.3d 231, 247 (2d Cir. 2002). Nonetheless, the Supreme Court has recognized that in a multi-defendant trial, where an accusatory statement is admissible as to one defendant but not others, courts can often employ a proper limiting instruction to eliminate any Confrontation Clause concerns arising as to the other defendants and trust jurors to abide by such an instruction. See, e.g., Marsh, 481 U.S. at 206-07 (noting "the almost invariable assumption of the law that jurors follow their instructions") (collecting cases).

However, there is a critical, though narrow, limitation on this routine presumption of faith in the jury's ability to follow limiting instructions. In <u>Bruton v. United States</u>, the Supreme Court recognized that introduction at a joint trial of "the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant" creates an untenable "risk that the jury will not, or cannot, follow instructions" to limit its consideration of the evidence only against the declarant. 391 U.S. 123, 135-36 (1968). Accordingly, <u>Bruton</u> held that when a non-testifying co-defendant's statements expressly inculpating a defendant are introduced at a joint trial, courts "cannot accept limiting instructions as an adequate substitute for [the defendant's] constitutional right of cross-examination." <u>Id.</u> at 135-37.

Unable to rely on a limiting instruction alone, courts generally have three options to cure a <u>Bruton</u> problem: (1) careful redactions that eliminate the references to co-defendants; (2) severance; or (3) exclusion of the co-defendant statements at a joint trial. <u>See generally</u> <u>United States v. Jass et al.</u>, 569 F.3d 47, 55-56, 56 n.5 (2d Cir. 2009).

When employing redaction to avoid Confrontation Clause concerns identified in <u>Bruton</u>, the Second Circuit recognizes two acceptable types of redactions: (1) redactions eliminating

9

altogether any reference to a co-defendant's existence; and (2) redactions replacing a co-defendant's name with neutral pronouns so that the statement, standing alone, does not refer to the co-defendant. See id. at 56 (noting that Bruton concerns are alleviated where a limiting instruction is coupled with the admission of co-defendant statements which have been redacted "'to eliminate not only the defendant's name, but any reference to his or her existence'" and which are only inferentially incriminating to a co-defendant "'when linked with evidence introduced later at trial'" (quoting Marsh, 481 U.S. at 208, 211)); id. (holding that "'a redacted statement in which the names of co-defendants are replaced by neutral pronouns, with no indication to the jury that the original statement contained actual names, and where the statement standing alone does not otherwise connect co-defendants to the crimes, may be admitted without violating a co-defendant's Bruton rights'" (quoting United States v. Tutino, 883 F.2d 1125, 1135 (2d Cir. 1989))).

The Second Circuit has made clear, however, that it is always preferable to use the first method of redaction, i.e. eliminating any reference to the existence of a co-defendant, so as "to eliminate completely from a confession any mention of a non-declarant defendant's existence." Id. at 56 n.5. Thus, the second method of redaction, which employs neutral pronouns, should be employed "only" as a last resort, "when complete

redaction would distort the confession, for example, by exclud[ing] substantially exculpatory information, or chang[ing] the tenor of the utterance as a whole." Id. (internal quotation marks and citation omitted). Moreover, the Supreme Court has warned that clumsy redactions that "simply replace a name with an obvious blank space or a word such as 'deleted' . . . or other similarly obvious indications of alteration" do not suffice to eliminate Bruton concerns and in fact, "so closely resemble Bruton's unredacted statements" that the law requires the same result. Gray v. Maryland, 523 U.S. 185, 192 (1998).

When courts do employ redactions involving neutral pronouns, the Second Circuit instructs that the propriety of the redactions should be analyzed with reference to two questions: "(1) did the redacted statement give any 'indication to the jury that the original statement contained actual names,' and (2) did 'the statement standing alone . . . otherwise connect co-defendants to the crimes.'" Jass, 569 F.3d at 58 (quoting Tutino, 883 F.2d at 1135). Thus, in analyzing these issues, a court reviewing the admissibility of a redacted statement which employs neutral pronouns must "view the redacted confession in isolation from the other evidence introduced at trial" in order to insure that "the confession, when so viewed, does not incriminate the defendant." United States v. Williams, 936 F.2d 698, 700-01 (2d Cir. 1991). If a redacted statement utilizing

11

neutral pronouns passes this test, "it may be admitted with a proper limiting instruction even though other evidence in the case indicates that the neutral pronoun is in fact a reference to the defendant." Id.

Redactions of co-defendant statements, moreover, cannot violate the rule of completeness under the Federal Rule of Evidence 106.[12]  Rule 106 requires "the omitted portion of a statement [to] be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion." United States v. Castro, 813 F.2d 571, 575-76 (2d Cir. 1987).  Federal Rule of Evidence 106 is violated "only where admission of the statement in redacted form distorts its meaning or excludes information substantially exculpatory of the declarant." United States v. Alvarado, 882 F.2d 645, 651 (2d Cir. 1989).  Courts evaluating claims under this Rule must "balance[] the interest in protecting a co-defendant's confrontation right against the judicial economy promoted by conducting a joint trial." United

---

[12] Federal Rule of Evidence 106 provides: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."

States v. Mussaleen, 35 F.3d 692, 696 (2d Cir. 1994) (citing Castro, 813 F.2d at 576).

   2.   *Application*

   Co-defendant Jiang allegedly made several statements that expressly implicate defendant Kuo in the offenses charged in the Indictment. These statements are described above. After Bruton, reliance on a limiting instruction alone is not sufficient to safeguard Kuo's confrontation rights, and the court has three options: (1) redactions that eliminate the references to Kuo; (2) severance; or (3) exclusion of the co-defendant statements at the joint trial. See Jass, 569 F.3d at 55-56, 56 n.5. Defendant Kuo argues that absent severance, he will be deprived of his Sixth Amendment right of confrontation. (See generally Mot.; Mem. in Supp. at 2-3.) Having reviewed the parties' submissions, and specifically the redacted versions of the co-defendant statements proposed by the government, the court disagrees.

   Indeed, in this case, the careful redactions proposed by the government easily "overcome th[e] probability," if any, that a jury would be unable to follow a limiting instruction. See Jass, 569 F.3d at 56 n.5. Rather than presenting the co-defendant statements as described above, the government proposes redacting the statements so that an agent may testify as follows: (1) "that [Jiang] admitted that he partnered with two

individuals to resume the operation of the van service"; (2) "that[] [Jiang] admitted that another individual approached him about beating John Doe #1; [and] [Jiang] stated he advised against the beating"; (3) that "[Jiang] was aware that two other individuals were concerned that John Doe #1 would identify them as his assailants"; and (4) "that [Jiang] acknowledged that he contacted an individual he knows shortly before and after 1:00 a.m. on July 19, 2010 at (845) 775-0019." (Opp'n at 4-5.) Consistent with Second Circuit precedent, these proposed redactions of the co-defendant statements do not give any indication that the original statements contained actual names, and the redacted statements, standing alone, do not connect Kuo to the crimes charged. See Jass, 569 F.3d at 58; Tutino, 883 F.2d at 1135. Nor do the redactions distort the original meaning of the co-defendant statements or put the statements out of context for the jury. See Alvarado, 882 F.2d at 651.

Based on this clear Supreme Court and Second Circuit precedent, the court finds that there is no basis to conclude that a jury will be unable to follow an appropriate limiting instruction or that the introduction of the redacted co-defendant statements would deprive Kuo of his Sixth Amendment Confrontation Clause rights. Therefore, severance is not required on the basis of Confrontation Clause concerns.

## CONCLUSION

For the reasons set forth above, defendant Kuo's motion to sever trial is denied.

**SO ORDERED.**

Dated:  December 2, 2010
    Brooklyn, New York

                    _____/s/_____
                    Hon. Kiyo A. Matsumoto
                    United States District Judge